

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEO T. GOMBASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 6331 |
| ) | |
| VESUVIUS USA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Vesuvius USA, Inc.'s ("Vesuvius") motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment.

## BACKGROUND

Plaintiff Leo T. Gombash ("Gombash") alleges that he was hired by Vesuvius as a maintenance mechanic in March of 1993. According to Gombash, one of the tasks that he had to perform at work was to clean 55 gallon drums and lids that contained a solvent known as Penacolit Resin. Gombash claims that on numerous

1

occasions he requested respiratory protection for the cleaning job and that he was finally provided with a negative pressure respirator. Gombash alleges however, that he was not properly trained in the usage, maintenance, and fitting of the respirator. Gombash also asserts that he discovered many safety violations at his work site and he complained to the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") in November of 2000. Gombash alleges that OSHA thereafter conducted an inspection of the work site and issued safety violations to Vesuvius. According to Gombash, OSHA also scheduled an informal conference to discuss the violations and Gombash was chosen as the representative of the union to attend the conference. Gombash also claims that, during the conference, he questioned the OSHA officer present at the conference as to why Vesuvius had not been cited for making Gombash clean the 55 gallon drums without proper respiratory protection. The OSHA officer indicated that representatives of Vesuvius had already indicated that such cleaning tasks were no longer performed. Gombash then allegedly informed the OSHA officer that the cleaning continued and that he had recently performed the task. Gombash claims that management at Vesuvius was upset with Gombash for raising the barrel cleaning issue with the OSHA officer. Gombash claims that after the informal conference, his supervisor, acting in accordance with management's wishes "commenced a campaign of harassment [and]

intimidation. . . ." (Compl. Par. 23). Gombash claims that in June of 2001 he was warned that he would soon be terminated for failing to work at least ten hours per day. Gombash alleges that in July of 2001 his supervisor directed Gombash to perform a job that Gombash could only perform slowly because of his knee condition. Gombash also claims that his supervisor yelled at him because he was not working fast enough and that, after an oral altercation, Gombash was told that he was going to be terminated. On July 23, 2001, Gombash's employment was terminated. Gombash alleges that his employment was terminated in retaliation for his reports made to OSHA regarding safety violations. In the instant action, Gombash has brought a state law claim for retaliatory discharge.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Although Illinois courts have refused in the retaliatory discharge context to

employ the burden-shifting analysis enunciated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Seventh Circuit has made it clear that "federal courts may still employ our own procedural rules, including the sequential inquiry analysis employed in Title VII cases, when hearing cases based on Illinois law." *Hiatt v. Rockwell Intern. Corp.*, 26 F.3d 761, 768 n.4 (7th Cir. 1994). Under such an analysis the plaintiff employee must first establish a *prima facie* case by showing that he was: "(1) in a protected class; (2) performing the job satisfactorily; (3) nevertheless the subject of a materially adverse employment action; and (4) others outside the protected class were treated more favorably." *Id.* If the plaintiff employee establishes a *prima facie* case the defendant employer must offer a "lawful, non-discriminatory reason for the adverse action." *Id.* If the defendant employer offers such a reason, the plaintiff employee must then show that "the employer's purported reasons are no more than a pretext" *Id.*

I. Applicability of the Burden-Shifting Analysis

Gombash argues that since he is bringing his claim under two theories, the "tort claim" and the "mixed motive" claim he is not required to submit to the *McDonnell-Douglass* burden shifting analysis for the "mixed motive" claim. (SJ Ans. 9). In support of this assertion, Gombash inexplicably cites *Desert Palace, Inc.*

5

*v. Costa*, 539 U.S. 90 (2003) in which the plaintiff filed a Title VII claim. *Id.* at 92. However, in the instant action, Gombash has not filed a Title VII claim. In *Costa*, the court addressed whether for a Title VII claim, a plaintiff must present direct evidence of discrimination claim in order to be entitled to a mixed motive instruction under Title VII. *Id.* Such issues are not before us in this action. Gombash also cites *Armbruster v. Unisys Corp.*, 32 F.3d 768, 772 (3rd Cir. 1994) which is not controlling precedent and in fact has been abrogated by the Third Circuit itself. *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235 (3rd Cir. 1999). Thus, Gombash has not shown that he is entitled to choose whether or not to proceed under the burden-shifting analysis.

## II. Burden-Shifting Analysis

Vesuvius argues that it is entitled to summary judgment under the burden-shifting analysis because the evidence clearly indicates that Gombash was not performing his job satisfactorily and Gombash has not pointed to another employee outside the protected class that was treated more favorably.

### A. Job Performance

Vesuvius argues that the evidence clearly shows that Gombash was not

6

performing his job satisfactorily and that Gombash's poor work performance was the reason that his employment was terminated. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts and either admit or deny each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument."). Pursuant to Rule 56.1, any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions."

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994)(stating in addition that a local rule pertaining to summary judgment "is more than a technicality"). Further, the 7th Circuit has held that "a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating in addition that "[s]ubstantial compliance is not strict compliance.").

In the instant action, Gombash admits, pursuant to Local Rule 56.1, that at all relevant times the published rules of conduct at Vesuvius prohibited insubordination, the use of profane language and the refusal to follow a supervisor's directive. ( R SF 9). Gombash admits that the work place rules also addressed the need for proper attendance at work by employees. ( R SF 9). Gombash admits that "he was formally and informally disciplined and counseled on numerous occasions." ( R SF 10). Gombash admits that in October 14, 1994, he was counseled and issued a written memorandum for using profane language including a derogatory racial slur. ( R SF 11). Gombash claims that he only used the racial slur in order to explain a joke, but the fact remains that he used the language in violation of work rules that barred the use of profanity. ( R SF 9, 11). Gombash admits that on November 5, 1998 he was "issued a verbal warning for failing to report off of [sic] work on November 4, 1998." ( R SF 12). Gombash claims that at the time he did not

understand how to properly report in sick for work. ( R SF 12). Gombash admits that on March 29, 1999, he was issued a written warning based upon excessive absenteeism. ( R SF 13). Gombash admits that on October 1, 1999, he was issued a one-day suspension for excessive absenteeism. ( R SF 14). Gombash admits that on February 2, 2000, he "was issued a written warning for reading a newspaper and not working fifteen minutes after an afternoon break had ended." ( R SF 15). Gombash claims that he was still on break, but was unable to convince his supervisor of that fact. ( R SF 15). Gombash admits that on August 16, 2000, he was issued a five day suspension of which three days were for excessive absenteeism. ( R SF 16). Gombash admits that on October 10, 2005, he was issued a four-hour suspension for refusing to perform a work assignment. ( R SF 17). Gombash claims that he told his supervisor that it was not his job to perform the requested task. ( R SF 17). Gombash admits that, after he had acted in an insubordinate manner and refused to perform the task, and his union representative called the Human Resources Department to address the matter, Gombash finally agreed to perform the requested task. ( R SF 17). Gombash admits that on April 6, 2001, he was issued a written memorandum for using profanity when speaking to a plant manager. ( R SF 18). Gombash admits that he made the profane statement, but claims that it was "meant to be a joke." ( R SF 18). Regardless, such a statement constituted profane language

9

which Gombash admits was barred by the work place rules. ( R SF 9). Gombash admits that on June 15, 2001, he was counseled and "issued a written memorandum for leaving his assigned work area before the end of his shift for three consecutive days." ( R SF 19). Gombash admits that on July 13, 2001, he yelled at his supervisor and used profanity. ( R SF 20). Gombash claims that he was unable to perform the task requested by his supervisor. ( R SF 20). Gombash admits that he yelled at his supervisor and does not specifically deny making the specific profane statements and does not point to any evidence to support a denial of the allegation that he used the alleged profanity in his statements. ( R SF 20). Gombash admits that he was called into the plant manager's office and that in the office he admitted that he swore at his supervisor. ( R SF 22). Gombash admits that after the July 13, 2001 incident, the Human Resources/Safety Coordinator gathered statements from individuals and one of Gombash's co-workers that had been working in the vicinity of the altercation confirmed that Gombash swore at his supervisor. ( R SF 24).

Gombash argues in a general conclusory fashion that some of his workplace violations should not be considered because of problems with the documentation of the discipline. (Ans 10). However, such an argument does not entitled Gombash to avoid the above admissions made pursuant to Local Rule 56.1. Gombash also claims that we must deny Vesuvius' motion for summary judgment because in regards to

some of the workplace violations "they are of dubious value since Plaintiff disputes their significance...." (SF Ans. 10). Regardless of the significance that Gombash himself chooses to attach to his workplace violations, the fact remains that he was violating workplace rules, was repeatedly disciplined and was not performing his job satisfactorily.

Based upon the above admissions made by Gombash pursuant to Local Rule 56.1 it is clear that Gombash could not be found to have been performing his job satisfactorily. Gombash attempts to bombard the court with an endless list of excuses for his shortcomings in his work performance. However, such excuses cannot hide the reality of his work record. Gombash admits to the excessive absenteeism. He admits that he was insubordinate and refused to perform tasks which he was required to perform and he admits to using profanity in the workplace in violation of workplace rules. Therefore, no reasonable trier of fact could conclude that Gombash was performing his job satisfactorily.

### B. Employees Outside the Protected Class

Vesuvius argues that Gombash has failed to point to employees outside the protected class that were treated more favorably. Gombash fails to even address this aspect of the *prima facie* case requirements and cites a Second Circuit case for his

version of the *prima facie* case elements, (SJ Ans. 10), despite explicit controlling Seventh Circuit precedent indicating that the *prima facie* case requirements includes a showing that "others outside the protected class were treated more favorably." *Hiatt*, 26 F.3d at 768. Gombash cites *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157 (7th Cir. 1996). However, in *Carson* the plaintiff had filed a claim alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, rather than a state law retaliatory discharge claim as in the instant action. *Id.* at 158. Therefore, Gombash has failed to point to other employees outside the protected class that were treated more favorably than him.

### C. Pretext

Even if Gombash were able to establish a *prima facie* case, Vesuvius has offered a legitimate explanation for the actions taken against Gombash. Vesuvius claims that Gombash was terminated for repeatedly failing to abide by established workplace rules. Gombash has not pointed to sufficient evidence that the given reason by Vesuvius is a pretext. Pretext may be shown be establishing: "'(1) that a discriminatory reason more likely motivated the employer,' or (2) 'that the employer's proffered explanation is unworthy of credence.'" *Hiatt*, 26 F.3d at 768. Gombash claims that he has set forth "ample evidence to doubt the accuracy of

Vesuvius' stated reasons that Gombash was terminated for swearing and insubordination." (Ans. 11). However, as explained above, based upon a review of the evidence and upon Gombash's admissions made pursuant to Local Rule 56.1, the evidence clearly indicates that Gombash was in fact terminated for such workplace rule violations. Gombash would have the court infer that Vesuvius' given reason is a pretext merely because Gombash's termination occurred after he complained to OSHA. However, simply because Gombash complained to OSHA does not immune him from termination for legitimate and lawful reasons such as are presented by Vesuvius in the instant action. Therefore, Gombash has failed to point to sufficient evidence of pretext.

### III. Elements of Retaliatory Discharge

Vesuvius also argues that, even if the burden-shifting analysis is not applied, Gombash has failed to present sufficient evidence to establish each element for a retaliatory discharge claim. Under Illinois law, for a retaliatory discharge claim a plaintiff employee must establish that he has been: "(1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992). Gombash has shown that he was discharged, but he has failed to point to sufficient

evidence to enable a reasonable trier of fact to conclude that he has established causation, namely that his employment was terminated in retaliation for the complaints made to OSHA. The Supreme Court of Illinois has stated that for a retaliatory discharge claim "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Id.* As explained above, Vesuvius has indicated that it terminated Gombash's employment because he violated workplace rules and such a reason is a valid reason for the termination. Also, as is explained above, Gombash has not pointed to sufficient evidence to show that the given reason is a pretext.

## CONCLUSION

Based on the foregoing analysis, we grant Vesuvius' motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 25, 2005

14